IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 2:20-cr-11 |
| | ) | |
| v. | ) | |
| | ) | |
| LAQUISHA MCFRAZIER, | ) | |
| | ) | |
| Defendant. | ) | |

## **POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**

The United States of America, through its attorneys, Raj Parekh, Acting United States Attorney, and Andrew Bosse and John F. Butler, Assistant United States Attorneys, hereby submits its position with respect to the defendant's sentencing factors. In the Presentence Investigation Report (PSR) prepared in this matter, the United States Probation Office determined the applicable guidelines range to be a term of 108-135 months of imprisonment, based on a Total Offense Level of 31 and a Criminal History Category of I. In accordance with Section 6A1.2 of the Sentencing Guidelines Manual and this Court's policy regarding sentencing, the United States represents that it has reviewed the PSR and consulted with the Probation Office and defense counsel. The defendant has one objection to the PSR, which the government addresses in Section III below.

For the reasons outlined below, the United States respectfully submits that a sentence of 110 months, at the lower end of the guidelines range and as allowed by the "safety valve" provisions of 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2, would be sufficient but not greater than necessary to accomplish the goals of 18 U.S.C. § 3553(a).

I.     **Background**

On February 5, 2020, a grand jury sitting in Norfolk returned an indictment charging the defendant, Xavier Howell, Tamara Howell, Kevin Howard, and an additional co-defendant with conspiracy to manufacture, distribute, and possess with intent to manufacture and distribute 500 grams or more of methamphetamine and 50 grams or more of "ice," in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A) (Count One); several of the other co-defendants faced additional charges. The defendant was charged with the same crime in a superseding indictment returned on October 8, 2020. ECF No. 126.

On December 8, 2020, the defendant pleaded guilty to Count One. PSR ¶ 3. Her sentencing is scheduled for May 14, 2021. Co-defendants Kevin Howard and Tamara Howell pleaded guilty to the same conspiracy. Mr. Howard also is scheduled to be sentenced on May 14. Ms. Howell was sentenced on January 19, 2021, to 96 months of imprisonment. PSR ¶ 9.

II.    **Motion**

The United States moves this Court, pursuant to U.S.S.G. § 3E1.1(b) and based upon the terms of the binding plea agreement in this case, to grant an additional one-level reduction in the defendant's offense level for acceptance of responsibility, as already reflected in the PSR. The defendant timely notified the United States of her intention to enter a plea of guilty, thereby allowing the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently.

### III.  Defense Objection

The defendant objects to not receiving a mitigating role reduction to her offense level. The government agrees with the Probation Office that a mitigating role reduction is not warranted here. The defendant already has received the benefit of the statutory and Guidelines-based safety valve reductions under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2, which allows the Court to sentence her below the otherwise-applicable 120 month mandatory minimum, and which also resulted in a two-point offense level reduction under U.S.S.G. § 2D1.1(c)(18). The defendant's conduct in this case was significant, wide-ranging, and more serious than that of her co-defendant Tamara Howell, as explained below. It exceeds the kind of minimal conduct that typically leads to a mitigating role reduction.

Section 3B1.2 of the Sentencing Guidelines allows for a decrease in the offense level based on the defendant's role in the offense if she was a "minimal participant in any criminal activity," a "minor participant in any criminal activity," or for conduct falling in between those two standards. U.S.S.G. § 3B1.2. The adjustment applies to defendants who are "substantially less culpable than the average participant in the criminal activity," including those who "perform[] a limited function in the criminal activity." *Id.* at appl. n.3(A). Factors considered include "the degree to which the defendant understood the scope and structure of the criminal activity"; "the degree to which the defendant participated in planning or organizing the criminal activity"; "the degree to which the defendant exercised decision-making authority"; "the nature and extent of the defendant's participation"; and "the degree to which the defendant stood to benefit from the criminal activity." *Id.* at appl. n.3(C).

The defendant's conduct in this case was neither minimal nor minor. She used her position as an employee of the United States Postal Service to help California-based

3

methamphetamine suppliers traffic massive amounts of that drug into Virginia. PSR ¶ 10(2). She addressed and mailed packages herself, and then tracked them as they made their way to Virginia; coordinated among members and associates of a significant Crips gang to move the drugs; and conducted wire transfers of drug-derived proceeds. PSR ¶ 10(4)-(12).

While the government does not have information suggesting she was *selling* drugs herself, she took part in most other steps of this conspiracy: she abused her job with a government agency to move dozens of pounds of methamphetamine through the mails in direct coordination with the California-based supplier and Virginia-based dealer, and she helped launder drug money through electronic payment applications. Then, in addition to that conduct, she transported drugs and drug money by commercial air travel to multiple states, working in tandem with an unindicted co-conspirator. PSR ¶ 10(3), (5), (14), (15). She was not simply paid to perform discrete tasks, U.S.S.G. § 3B1.3(C)—she was a willing conspirator who played several key roles within the scope of the larger crime. The defendant is fortunate she was not assessed with an additional two-point enhancement for abusing her position of trust as a supervisory United States Postal Service employee under § 3B1.3. She should not be credited as a minor participant in this case.

**IV.     Position on Sentencing and Argument**

"[I]n imposing a sentence after *Booker*, the district court must engage in a multi-step process. First, the court must correctly determine, after making appropriate findings of fact, the applicable guideline range." *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006). "Next, the court must 'determine whether a sentence within that range serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors.'"

4

*Id.* (quoting *United States v. Green*, 436 F.3d 449, 455 (4th Cir. 2006)).  In making this determination,

> a sentencing court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and the need "to reflect the seriousness of the offense," provide "just punishment," "afford adequate deterrence," "protect the public," and "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

*United States v. Hampton*, 441 F.3d 284, 287 (4th Cir. 2006) (quoting 18 U.S.C. § 3553(a)).

    A.    <u>Nature and Circumstances of the Offense</u>

The nature and circumstances of the offense here—both the larger conspiracy and the defendant's role within it—are serious.  She played multiple roles in a massive interstate methamphetamine trafficking operation, in which dozens of pounds of nearly pure "ice" procured by members of the Grape Street Crips gang in Compton, California, were shipped into Hampton Roads for distribution.  While methamphetamine overdose deaths are less common than heroin/fentanyl overdose deaths, they are a serious and growing problem.  According to the Virginia Department of Health's Chief Medical Examiner, the number of fatal overdose methamphetamine deaths in Virginia has skyrocketed in recent years, from a total of six in 2007 to 198 in 2019 and an estimated 385 in 2020—a year-over-year increase of 94% in the last year alone.[1]  In the Hampton Roads area, high-purity methamphetamine imported from the West Coast, perfectly illustrated by this case, is a growing problem.

The defendant used her position as an employee of the Postal Service, where she was a supervisor, to place packages of narcotics into the mail in the Los Angeles area and track their

---

[1] *See* Virginia Department of Health, Office of the Chief Medical Examiner, Fatal Drug Overdose Quarterly Report, Fourth Quarter 2020, *available at* https://www.vdh.virginia.gov/content/uploads/sites/18/2021/04/Quarterly-Drug-Death-Report-FINAL-Q4-2020.pdf, pages 2 and 24.

5

movements—including by tracking package scan information, *see* PSR ¶ 10(7)—before pickup by the local members of the conspiracy, including Xavier Howell and his sister Tamara. As noted above, she also received drug proceeds and facilitated the laundering of drug proceeds through electronic cash applications. Investigators learned of her role in the scheme only after Xavier and Tamara Howell were caught with over 1600 grams of nearly pure methamphetamine that the defendant had shipped to them days earlier at the behest of the Grape Street Crips member who served as the conspiracy's main source of supply.

The defendant also served the conspiracy, which operated in multiple states, by moving both money and narcotics—including fentanyl recovered in this case—through commercial air carriers. This courier work was sophisticated, involving conspirators in California, a second courier on each flight, and the coordination of the hand-off of cash and drugs in destination states followed by prearranged turn-around flights. She continued to transport drug proceeds on commercial airlines even after the Virginia conspirators were arrested in this case. The defendant, despite not having a previous criminal record, is no dilettante. She knew, from the involvement of other family members in significant narcotics cases, the potential consequences of joining this organization. She made the knowing decision to do so despite having a well-paying job with the federal government, a college degree, and a young child for whom she was solely responsible.

  B. <u>History and Characteristics of the Defendant</u>

The defendant, who is 33 years old, grew up in difficult circumstances in California and Washington state. PSR ¶¶ 37-39. Among other things, her father, apparently a well-known narcotics dealer in Washington, was incarcerated in federal prison on a drug conviction for part of her childhood. PSR ¶ 37. She was raised with the help of several relatives, was by all

accounts an extremely bright student, and ultimately received a Bachelor of Science degree from the University of Oregon in 2010.  PSR ¶¶ 39, 48-49.  She was gainfully employed in a customer-service job and then for more than five years at the U.S. Postal Service, where she started as a postal clerk and was promoted to a supervisory position.  PSR ¶¶ 55-56.  Her husband, a Crips gang member, is serving a 13-year sentence in the California Department of Corrections for robbery, and has prior drug convictions as well.  PSR ¶ 40.  The defendant's mental and physical health conditions are described in the PSR; none of them contributed to her decision to commit the crimes at issue here.

      The government anticipates that defense counsel may request a significant downward variance based on the defendant's status as a parent, her health, and her compliance with the terms of her plea agreement.  The government's position is that those factors are not at this time germane.  The defendant knew, because of her family history, that involvement in drug conspiracies can lead to federal prison.  She chose to join this conspiracy despite having a sought-after federal job, a good salary, a four-year college degree, and a young child for whom she was the primary caregiver.  She knowingly put those things at risk by abusing her job to help traffic serious narcotics.  That prison could take her away from her child is a foreseeable consequence—indeed, the most readily foreseeable consequence—of joining in a narcotics conspiracy.  She made the decision to do so.  That decision appears aberrant, at least at the outset, considering the defendant's completely clean criminal record.  But it was not a spur-of-the-moment decision or an impulsive act that caught her up in this case, as is sometimes argued in scenarios where the defendant is, for example, the getaway driver in a Hobbs Act robbery.  The defendant's involvement in this conspiracy ran for about a year and a half, and continued until *after* the Virginia conspirators were arrested.  She did not just mail and track the drug

packages—she hand-delivered narcotics and drug proceeds herself, making multiple interstate trips on commercial airlines while smuggling contraband on her person and in her luggage.

Second, while the defendant has health problems, *see* PSR ¶¶ 43-44, they do not appear to be significantly outside the norm for BOP inmates, many of whom struggle with weight-related issues. BOP has numerous programs for defendants looking to improve their health, as well as on-site healthcare, and is actively vaccinating inmates at its facilities across the country.

Last, the defendant has received credit in multiple ways for her decision to plead guilty, which is very much to her credit. She has received an offense level reduction for accepting responsibility and has benefited from the safety valve and an additional two-point reduction under U.S.S.G. § 2D1.1(c)(18). Additionally, despite her wide-ranging conduct, the government is requesting a sentence near the low end of the calculated guidelines, primarily because of her lack of previous criminal history and her timely acceptance of responsibility for this crime. If additional consideration is warranted, the appropriate time for credit will be after she is sentenced.

C.      Other Pertinent § 3553(a) Factors

In addition to the facts of the case and the defendant's personal history and characteristics as related in the PSR, the government also considers, in making its sentence request, the need to avoid unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6). The defendant's conduct in this case is more serious—and not just slightly more serious—than that of Tamara Howell, who was sentenced to a term of 96 months. Ms. Howell also took part in the movement of packages of methamphetamine for the conspirators and was not directly involved in distributing drugs. She worked with her brother to pick up the packages shipped from California and move them from the shipping destination in Virginia Beach to a second location, where her brother and

Kevin Howard took possession of the drugs and packaged them for retail distribution. Like the defendant, Ms. Howell also engaged in electronic money transfers of drug proceeds. But the defendant, unlike Ms. Howell, used her position as a federal employee to help the conspiracy, and took the additional steps of personally smuggling drugs and cash through airports and onto commercial airlines, to multiple destination states. She played a more significant role in the conspiracy. Although Tamara Howell had a criminal history, and the defendant does not, most of Ms. Howell's prior crimes were relatively low-level. The government would agree that the need for specific deterrence as to Ms. Howell was more significant—but, again, the defendant was the more significant player in this criminal conspiracy.

The defendant's involvement in this crime, given her background, her family's experience with the trauma caused by drug crime, and her education and work history, is baffling. But she did not merely dip her toe into criminality. She spent approximately 18 months mailing drug packages and getting on planes to move cash and narcotics for a narcotics conspiracy supplied by a major criminal street gang. The requested sentence reflects the grave seriousness of the offense, will promote respect for the law, and will deter the defendant and similarly-situated individuals from agreeing to help, in any way, criminal enterprises like this one.

## V.     Conclusion

For the reasons stated above, and taking all the Section 3553(a) factors into account, the government respectfully submits that a total sentence of 110 months is appropriate and not greater than necessary.

                Respectfully submitted,

                Raj Parekh
                Acting United States Attorney

By:      /s/
                Andrew Bosse
                Assistant United States Attorney
                United States Attorney's Office
                101 West Main Street, Suite 8000
                Norfolk, Virginia 23510
                Office Number: 757-441-6331
                Facsimile Number: 757-441-6689
                andrew.bosse@usdoj.gov

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on this 30th day of April, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

    I HEREBY CERTIFY that on this 30th day of April, 2021, I sent by electronic mail a true and correct copy of the foregoing to the following:

    Lance J. Hall
    Senior U.S. Probation Officer

        /s/
    Andrew Bosse
    Assistant United States Attorney
    United States Attorney's Office
    101 West Main Street, Suite 8000
    Norfolk, Virginia 23510
    Office Number: 757-441-6331
    Facsimile Number: 757-441-6689
    andrew.bosse@usdoj.gov